MRS. LOIS R. BUMGARDNER, ADMINISTRATRIX OF THE ESTATE OF DONNA
    RAE BUMGARDNER ELLIOTT, DECEASED, v. C. W. ALLISON, SR.,
    HARRIET O. ALLISON, C. W. ALLISON, JR., and GRAHAM T. ALLI-
    SON, TRADING AS ALLISON FENCE COMPANY; AND ROBERT H.
    GEORGE AND H. M. BARGER, TRADING AND DOING BUSINESS AS RED
    BIRD TAXI.

(Filed 25 November, 1953.)

**1. Automobiles §§ 8d, 11b, 18d, 21—Whether negligence in leaving vehicle
    parked without lights concurred in proximately causing death to pas-
    senger in car colliding with the rear of truck held for jury.**

Evidence tending to show that the operator of a truck parked it on a
city street and left the truck without lights or flares of any kind on a dark
and misty night some 315 feet from the nearest street light, that pipes,
constituting a part of the truck load, extended some nine feet beyond the
truck body without flag or light at the end of the pipes, and that plaintiff's
intestate was fatally injured when the driver of the taxi in which she was
riding collided with the rear of the truck, causing pipe of the truck to
pierce her head, *is held* sufficient to be submitted to the jury upon the issue
of the truck driver's negligence in violating the provisions of G.S. 20-134
and G.S. 20-117, and whether such negligence concurred with the negli-
gence of the taxi driver in driving at excessive speed under the circum-
stances, G.S. 20-141, and in failing to keep a proper lookout, it being a
permissible inference from the evidence that the taxi driver was blinded
by the lights of an oncoming car when he was in close proximity to the
rear of the unlighted truck parked in his lane of travel, and nonsuit on
the ground that the negligence of the truck driver was insulated by the
intervening negligence of the taxi driver was properly denied.

**2. Trial § 22c—**

It is the province of the jury and not the court to resolve discrepancies
and contradictions in the evidence.

**3. Trial § 49½—**

A motion to set aside the verdict on the ground of excessive award is
addressed to the discretion of the trial court.

**4. Death § 8—**

In this action to recover for the wrongful death of intestate, *it is held*
that no abuse of discretion is shown in the refusal of the trial court to set
aside the award as excessive, there being evidence that intestate was a
healthy girl eleven years old of more than average ability.

APPEAL by defendants Allison, doing business as Allison Fence Com-
pany, and Robert H. George, from *Moore, J.,* and a jury, at April Regu-
lar Civil Term, 1953, of CATAWBA.

Civil action by plaintiff to recover damages for the alleged wrongful
death of her intestate granddaughter, Donna Rae Bumgardner Elliott,
a child 11 years of age, who was riding as a passenger in a taxi owned
and operated by the defendant Barger. She was killed when the taxi

collided with the rear end of a parked truck belonging to the defendants Allison. The collision occurred in the nighttime, about 6 :05 o'clock p.m., 3 December, 1951.

The action was brought against taxi-driver Barger; the truck driver George, who parked the truck, and the truck owners, hereinafter referred to as the Fence Company. It was admitted that in parking the truck the defendant George was acting within the course of his employment as servant of the Fence Company. The gravamen of the complaint is that the intestate's death was caused by the concurrent negligence of all the defendants.

The case was here at the Fall Term, 1952, when we affirmed an order of the Superior Court overruling the demurrer of the present appellants and denying the defendant Barger's motion to strike certain allegations of the complaint, *Bumgardner v. Fence Co.*, 236 N.C. 698, 74 S.E. 2d 32.

On retrial the plaintiff offered evidence which may be summarized as follows: On the afternoon in question the intestate had been to a movie in the City of Hickory. After leaving the show she phoned her grandmother, with whom she lived, and told her it was getting dark and she was afraid to walk home "through the dip or hollow." She was instructed to take a cab home.

At about 6 o'clock p.m., shortly after dark, she employed the taxi of the defendant Barger and in it set out toward home. The route led eastwardly along Second Avenue, S.E., inside of the City of Hickory. The Avenue east of the intersection with Fifth Street is downhill, creating a dip between Fifth Street and Seventh Street. At the dip the Avenue "kind of levels off" and then starts back up. The Allison truck was parked near the bottom of the dip, "in the level part," slightly on the east side of the dip—"30 to 40 feet east of the dip." The truck was headed east, the direction the taxi was traveling. Both right wheels were against the curb on the south side. The cab of the truck was locked. The operator was not there. The street is paved, and is 30 feet wide from curb to curb. The truck was about 8 feet wide.

There were no lights, flares, reflectors, or flags on or near the truck. It was partly loaded with pipes about an inch in diameter. These pipes protruded beyond the rear end of the bed of the truck 9 feet and 3 inches. There was no light or flag at the end of the pipes. The bed of the truck was loaded with gravel and sand of a gray color piled on top of the pipes.

Looking west along Second Avenue from the rear of the truck, the nearest street light was at the intersection of Fifth Street, a distance "of 342 or 343 feet"; and looking east in front of the truck, it was 315 feet to the nearest street light—at the intersection of Seventh Street. Sixth Street was not opened.

Traveling east on Second Avenue from Fifth Street there were no houses or structures of any kind on the right, or south, or south side, to where the truck was parked. On that side it was a distance of 400 to 425 feet from Fifth Street to the first structure. On the left, or north side, of the Avenue "going east from . . . Fifth Street . . . to where the truck was parked," there was just one structure, Oliver Moore's home, and from there on east it was about 525 feet to the next building on that side of the Avenue.

An ordinance of the City of Hickory, adopted under the authority of G.S. 20-134 and then in effect, provides, among other things, that "The displaying of lights upon a vehicle when lawfully parked at night upon a street of the City of Hickory in accordance with this chapter shall not be required when there is sufficient light to reveal any person within a distance of 200 feet upon such street."

It was dark, rainy, misty and foggy. The road was wet. A person could be revealed at "that time and place" for "a distance of 100 feet at most" according to one witness. Another said "a person could be revealed by . . . car lights . . . at . . . around 100 feet ahead." Others placed the distance "by car lights" at 100, 150, and 200 feet.

Under these circumstances the defendant Barger was driving his taxi eastwardly at from 20 to 25 miles per hour when, while blinded by the lights of an oncoming car, he was suddenly startled by something crashing through his windshield, which it was later learned were the pipes which protruded from the rear of the truck body. The intestate, who was sitting on the rear seat of the taxi, on the right side, was hit by two or more of the pipes. One penetrated her right eye socket and came out the rear of her head. Another made a large gash in her face near her nose. The result was instant death.

At the point of collision the right wheels of the taxi were about "four or five feet from the right curb." The taxi "was jammed under the left side and rear of the truck body, with the cowl, at the bottom of the windshield, in contact with the end of the bed of the truck. The bumper of the taxi extended to the left rear dual wheels of the truck. The pipes projected through the taxi windshield, across the back seat, and knocked out the rear glass behind where the little girl was sitting. When officer Teague arrived, the rear lights and also the left front light of the taxi were burning.

D. E. Smith, a witness for the plaintiff, testified that he "passed there" earlier that evening, as he put it, "about 30 minutes after sundown. It was misting and raining at the time." He further said he saw the parked truck and there were no "light flares, reflectors or flags on the truck. . . . I did not hit the truck. When I first saw the truck I do not guess I was 30 feet from it. I was traveling at a speed of about 30 miles per hour.

. . . There was room to pass the truck. . . . I was going in an eastern direction, I hit the bottom of the dip and leveled out, . . . At the time I saw the truck and swerved to the left to miss it, I was not meeting any cars. . . . I was pretty close to the rear end of the pipes when I swerved; it would be hard to say how close. I was approximately 2 or 3 feet or a little more from the rear end of the pipes when I swerved."

The defendants offered no evidence.

Issues were submitted to and answered by the jury ás follows:

"1. Was the death of plaintiff's intestate Donna Rae Bumgardner Elliott caused by the negligence of the Allison Fence Company and Robert H. George, as alleged in the complaint? Answer: YES.

"2. Was the death of Donna Rae Bumgardner Elliott caused by the negligence of the defendant H. M. Barger, T/A Red Bird Taxi Co., as alleged in the plaintiff's complaint? Answer: YES.

"3. What amount, if any, is the plaintiff entitled to recover for the death of her intestate, Donna Rae Bumgardner Elliott? Answer: $25,000.00."

From judgment entered upon the verdict, the defendants Fence Company and Robert H. George appealed, assigning errors.

*Theodore F. Cummings for plaintiff, appellee.*
*Smathers & Shuford and Helms & Mulliss for defendants, appellants.*

JOHNSON, J. The evidence adduced below, as it relates to the defendants Fence Company and truck-driver George, makes out a clear *prima facie* case of actionable negligence against these defendants. This, without more, on the basis of the testimony tending to show (1) that the truck was left parked in the nighttime without lights of any kind, in violation of G.S. 20-134, and also in violation of the ordinance of the City of Hickory adopted pursuant to the provisions of this statute, and (2) that there was a failure to display a red light at the end of the pipes which projected out behind the truck body, as required by G.S. 20-117. See *Barrier v. Thomas, etc., Co.,* 205 N.C. 425, 171 S.E. 626; *Brewer v. Moye,* 200 N.C. 589, 157 S.E. 871; *Williams v. Motor Express Lines,* 198 N.C. 193, 151 S.E. 197; *Hall v. Coble Dairies,* 234 N.C. 206, 67 S.E. 2d 63.

It is also manifest that the evidence adduced below, as it relates to the defendant Barger, is sufficient to make out a *prima facie* case of actionable negligence as to him. This, upon the theory that the evidence was sufficient to support the inference (1) that he was driving at a speed greater than was reasonable and prudent under the conditions then existing, in violation of G.S. 20-141 (*Cox v. Lee,* 230 N.C. 155, 52 S.E. 2d 355; *Wilson v. Motor Lines,* 230 N.C. 551, 54 S.E. 2d 53; *Morris v. Transport Co.,* 235 N.C. 568, 70 S.E. 2d 845), or (2) that he failed to

exercise due care in maintaining a lookout. *Marshall v. R. R.,* 233 N.C. 38, 62 S.E. 2d 489; *Adcox v. Austin,* 235 N.C. 591, 70 S.E. 2d 837.

The decisive question presented by this appeal is whether, as urged by the appellants Fence Company and George, the case should have been nonsuited below as to them on the ground that their negligence was insulated by the intervening negligence of taxi-driver Barger, who does not appeal.

The appellants point to the testimony of officer Teague who said Barger told him that "as he crossed the intersection (of Fifth Street) he . . . was blinded by lights . . . and the next thing he knew something went through the windshield." The appellants insist that the single inference deducible from this evidence, and other supporting evidence offered by the plaintiff, is that Barger became blinded at the Fifth Street intersection, some 300 feet or more from the parked truck, and blindly drove his taxicab on this entire distance through the darkness without slackening his speed or keeping a proper lookout, and crashed into the rear end of the truck when there was more than 20 feet of roadway open on the left for him to have passed in safety. On this hypothesis the appellants urge that the court below erred in not holding as a matter of law that Barger's negligence insulated the negligence of the appellants. Nothing else appearing, this contention would seem to merit serious consideration.

But more appears. On cross-examination, officer Teague in commenting further on his conversation with taxi-driver Barger went on to say: "He (Barger) did not say, 'I was in the intersection,' but said he was somewhere near the intersection. He did not point out one certain place." Also the record discloses that Patrolman Brown, testifying in respect to a conversation he had with Barger, said, in part, that Barger told him: "he was going over this dip and went down the dip to Second Avenue and that an oncoming car met him and blinded him and the next thing he knew something hit him and struck the car." Cross-examination: "Mr. Barger . . . told me . . . it was raining at the time and that he was driving 20 to 25 miles per hour. *He said he was suddenly blinded by lights of an oncoming car after he went into the dip. The next thing he remembered was something hitting him."* (Italics added.)

It thus appears that there is plenary evidence to support the inference that Barger was in close proximity to the truck, rather than at or near the Fifth Street intersection, when blinded by the lights of the oncoming car and that the collision occurred while he was so blinded. It was for the jury, and not for the court, to resolve the discrepancies and dispose of the contradictions in the testimony. *Donlop v. Snyder,* 234 N.C. 627, 68 S.E. 2d 316; *Childress v. Lawrence,* 220 N.C. 195, 16 S.E. 2d 842.

We conclude that Judge Moore correctly overruled the appellants' motion for judgment as of nonsuit. The evidence adduced below clearly

made out a *prima facie* case of actionable negligence against the appellants and also against Barger on the theory of concurrent negligence.

Decision here is controlled by the principles illustrated and explained in these cases: *Caulder v. Gresham,* 224 N.C. 402, 30 S.E. 2d 312; *Smith v. R. R.,* 200 N.C. 177, 156 S.E. 508; *Glazener v. Transit Lines,* 196 N.C. 504, 146 S.E. 134. See also: *McClamrock v. Packing Co., post,* 648; *Price v. Monroe,* 234 N.C. 666, 68 S.E. 2d 283; *Barber v. Wooten,* 234 N.C. 107, 66 S.E. 2d 690; *Hall v. Coble Dairies, supra* (234 N.C. 206); *Chaffin v. Brame,* 233 N.C. 377, 64 S.E. 2d 276; *Riggs v. Motor Lines,* 233 N.C. 160, 63 S.E. 2d 197; *Pascal v. Transit Co.,* 229 N.C. 435, 50 S.E. 2d 534; *Cole v. Koonce,* 214 N.C. 188, 198 S.E. 637; *West v. Baking Co.,* 208 N.C. 526, 181 S.E. 551; 5 Am. Jur., Automobiles, Sec. 345; Annotations: 16 A.L.R. 465; 62 A.L.R. 1425.

Another assignment of error urged by the appellants relates to the refusal of the trial court to set aside the verdict on the ground that it is excessive. This motion was addressed to the discretion of the trial court. *Caulder v. Gresham, supra* (224 N.C. 402). The evidence below tends to show that the intestate was a strong, healthy girl of more than average ability. Her school teacher, Mrs. James Whitener, testified in part that she "was a very good student . . . She was an easy child to teach. She could catch on to things . . . She was respectful and obedient and took part in everything in the school room and on the playground. She was a very happy child and was one of the nicest girls I have ever taught. . . . I considered her above average." The ruling below will be sustained; no abuse of discretion has been made to appear. *Poniros v. Teer Co.,* 236 N.C. 145, 72 S.E. 2d 9; *Hawley v. Powell,* 222 N.C. 713, 24 S.E. 2d 523; *Pruitt v. Ray,* 230 N.C. 322, 52 S.E. 2d 876.

The remaining exceptions brought forward by the appellants relate to the reception of evidence and the charge of the court. They have been examined with care, but no error sufficient to justify a retrial is disclosed. *Simmons v. Highway Commission ante,* 532; *Scenic Stages v. Lowther,* 233 N.C. 555, 64 S.E. 2d 846; *Call v. Stroud,* 232 N.C. 478, 61 S.E. 2d 342.

The verdict and judgment will be upheld.

No error.