HAHN ET AL. *v.* MOORE

[No. 18,589.  Filed April 1, 1956.  Rehearing denied June 5, 1956.  Transfer denied December 21, 1956.]

150

*Ryan, Chester & Clifford,* of Valparaiso, *F. LeRoy Wiltrout,* of Elkhart, and *Paul Reed,* of Knox, for appellants.

*Jay E. Darlington,* of Hammond, for appellee.

KELLEY, J.—Action by appellee to recover of appellants damages resulting from the death of his eight-year old son which, allegedly, was caused by the negligence of appellants on February 11, 1949. The verdict of the jury was for appellee as against both appellants and assessed his damages at $20,000.00. Consistent judgment followed.

The several new trial motions of appellants, as presented to this court, undertake to secure our consideration and determination of only two asserted errors, namely: that the court erred in refusing to give appellants' respective, but identical, tendered instructions No. 13 and No. 14, and that the assessment of damages by the jury is excessive.

Said refused identical instructions No. 13 and No. 14 proposed to tell the jury that ". . . in no event can the amount of plaintiff's (appellee's) recovery exceed $10,000.00." It is the contention of the appellants that the amount of damages recoverable by a father for the death of his child is limited to $10,000.00 by the act commonly referred to as the "Wrongful Death Act", the same being Acts 1881 (Spec. Sess.), Ch. 38, §8, p. 240, as amended, Burns' 1946 Replacement, §2-404. More particularly, they urge in the main that said wrongful death act and the act giving the parent a right of action for the death of his child, Acts 1881

(Spec. Sess.), Ch. 38, §29, p. 240, Burns' 1946 Replacement, §2-217, were enacted at the same session of the legislature as different sections of the same act, have a common purpose, and, therefore, are in *pari materia* and must be construed together so as to give effect to each; and that it was the intention of the legislature to place a limitation on the damages recoverable by the parent.

Since the enactment of the parent's action statute and the wrongful death act in 1852 and the re-enactment thereof in 1881, our court several times endeavored to construe the parent's action statute by application of the doctrine of *pari materia*, whereby provisions of the wrongful death act were, when deemed expedient, carried over and by judicial fiat, engrafted upon the parent's action statute. In *The Pittsburgh, Fort Wayne and Chicago Railway Company* v. *Vinings, Administrator* (1867), 27 Ind. 513, the court, on petition for rehearing, declared that the two sections "must therefore be construed together" and proceeded (in what seems to be pure *obiter dicta*) to implant in the parent's right section the provisions of the wrongful death act. The rule of construction adopted by the court in the said Vinings case was followed in *The Cincinnati, Hamilton and Dayton R. R. Co.* v. *Chester* (1877), 57 Ind. 297, and the holding of the latter case was adhered to in *Gann* v. *Worman* (1880), 69 Ind. 458.

Apparently, the court in the three cases last referred to failed to notice the announcement of the court in the earlier case of *The Ohio and Mississippi Railroad Company* v. *Tindall* (1859), 13 Ind. 366, wherein the court not only confirmed the right of the deceased child's mother, the father having died, to maintain the action for damages in her name but, in answer to the contention that the later wrongful death section repealed the earlier parent's right action on the ground of repug-

nancy, significantly observed that the former (wrongful death) statute applied to cases of adults, and the latter (parent's action) to cases of infants.

In *Mayhew* v. *Burns* (1885), 103 Ind. 328, 2 N. E. 793, the court, by modifying the *Gann* v. *Worman* case and the other cases giving like construction to the said statutes, seems to have dispelled the idea of interdependence of the two statutes referred to and held that they created distinct and independent rights. The court reasoned that the parent's action section conferred on the parent a new and independent right of action for lost services of his deceased child rather than a mere designation of the parent as the proper party in whose name the right to damages under the wrongful death section should be enforced for the benefit of the next of kin. The construction of the statutes given in the Burns case was followed in *The Louisville, New Albany and Chicago Railway Company* v. *Goodykoontz, Guardian* (1888), 119 Ind. 111, 21 N. E. 472, wherein the court, in pungent language, stated: "Section 284 (wrongful death act), which gives a right of action to the personal representatives for the exclusive benefit of the widow and children, or next of kin, *is entirely disconnected* from section 266 (parent's action), and *exerts no sort of influence* upon the construction of, or rights conferred under, the latter section. *Mayhew* v. *Burns, supra*. The two are not to be confused or confounded with each other, but *each is to be construed independently of the other*." (Our emphasis).

The right of a parent to the services of his minor child is a property right and the statute (Sec. 2-217, Burns' 1946 Replacement) gives the parent, in his own right, a cause of action for loss of such services or other pecuniary injury occasioned by personal injuries to or the death of his minor child, which action is not one for injury to the person but for

injury to property within the meaning of Sec. 2-601, Burns' 1946 Replacement. *Thompson* v. *Town of Fort Branch* (1931), 204 Ind. 152, 178 N. E. 440, 82 A. L. R. 1413; *Graf* v. *City Transit Company, Inc.* (1942), 220 Ind. 249, 41 N. E. 2d 941. See, also, *Merritt* v. *Economy Department Store, Inc.* (1955), 125 Ind. App. 560, 128 N. E. 2d 279.

It thus has been demonstrated that attempts have been made from time to time to tack onto the parent's action section of the statute various parts and provisions of the wrongful death act and that all such endeavors have been repudiated as predicated upon the erroneous theory that the parent's act was subordinate to and dependent upon the wrongful death act. The court in the earlier cases was apparently lead into error by the failure to appreciate that the parent's right arising from the loss of services of his minor child is a property right based upon the pecuniary loss suffered by the parent when wrongfully deprived thereof, while the right of the widow or next of kin to recover, through the personal representative, for any injury they may have sustained by reason of the death of an adult is grounded upon their pecuniary interest in the life of the decedent.

During the span of time from the enactment of the parent's action statute in 1852 to date of the occurrence giving rise to this action, February 11, 1949, a period of 97 years, the act remained unaltered by the legislature. It was reenacted at the special session in 1881 but without change in the wording or context thereof. It must be presumed, of course, that the legislature was aware of the holdings in *Mayhew* v. *Burns* (1885), and *The Louisville, etc., R. R. Co.* v. *Goodykoontz* (1888), *supra,* to the effect that the parent's action section and the wrongful death section were entirely disconnected and without influence one upon the other and that they created distinct and independent

rights. If the legislature had considered such construction by the court to be contrary to its will and that the limitations provided in the wrongful death act should also limit the parent's action section, it would have been a simple matter for it to have so provided. The absence of such action by the legislature body logically warrants the conclusion that its intent with reference thereto had been adequately expressed by the court. We may here observe that although the legislature, in 1951, amended the parent's act in certain respects (see Sec. 2-217, Burns' 1955 Cum. Pocket Suppl.), the act, in the respects now being considered, remains as it was prior to the amendment.

No sound reason has been advanced to sustain the proposal either that a parent should be limited in the amount of his recovery by the provisions of the wrongful death act or that we are authorized to judicially legislate such fact. To grant that the limitation of recovery provided for in the wrongful death act should be, by judicial construction, wrought into the parent's action section would, of necessity, result in a like transposition of other provisions of the wrongful death act, such as, for instance, the two-year limitation for commencement of the action and that the damages must inure to the benefit of the widow and children, if any, or the next of kin, and be distributed as personal property of the decedent. That such provisions do not apply to the parent's action was established in *Graf* v. *City Transit Company, Inc.* (1942), *supra,* and *Mayhew* v. *Burns* (1885), *supra.*

The only Indiana case we have discovered wherein the court gave any indication that the limit of recovery provided for in the wrongful death act applied to the parent's action section is *The Pittsburgh, Fort Wayne and Chicago Railway Company* v. *Vinings* (1867), *supra.* In its opinion on the petition for rehearing the court there said that the two sections must be construed

together and that the general terms of the wrongful death act, including the $5,000.00 limitation, applied to the parent's action section. However, as we have already pointed out, that holding was modified, if not, in fact, completely refuted, in *Mayhew* v. *Burns* (1885), *supra.*

The parent's action section is clear and unambiguous. It is separate, distinct, and independent of the wrongful death act. There appears, in this case, no reason for construction or the application of the doctrine of *pari materia.* It follows that the court committed no error in refusing the requested instructions.

Appellants' brief quotes, in effect, the rule that the measure of damages in a case of this kind is the value of the child's services from the time of death until he would have attained his majority, taken in connection with his prospects in life less the cost of his support and maintenance during that period, including board, clothing, schooling and medical attention. To this may be added, in proper cases, the expenses of care and attention to the child, made necessary by the injury, funeral expenses and medical services. *Thompson* v. *Town of Fort Branch* (1931), *supra, The Pennsylvania Co.* v. *Lilly* (1881), 73 Ind. 252, 254; *Jones* v. *Drewery's, Limited, U. S. A., Inc.* (1945), 149 Fed. 2d 250, 251. Appellants also add that the jury may consider the condition of the decedent's family and the pecuniary value of all acts of kindness and attention which the deceased child might reasonably be anticipated to render until its majority. But that the parent has been deprived of the happiness, comfort, and society of the child or has incurred physical or mental suffering or pain by reason of loss of the child, may not be considered by the jury. We find no reason to question appellants' statement as to the measure of damages and the

matters which may and may not be considered by the jury.

The evidence discloses that appellee's child was a boy aged 8½ years, in good health, active, alert, bright, and of good disposition; that he carried coal, burned the trash, mowed the lawn, and desired to acquire a paper route and carry papers; that he was thoughtful of his parents, gave his father a billfold and picture and gave his mother flowers and a card on her birthday. There was evidence, introduced by appellee, consisting of the oral testimony of an executive director of a private employment office serving in the area of Gary, Hammond, and South Bend. The witness stated his familiarity with rates of pay for different types of work available to young men in Lake County, Indiana. In general, his testimony tended to establish that from age 10 to 15, inclusive, the minimum earnings of a paper boy would be $3,390.00 and that the minimum earnings of a young man engaged in filling station work, which, the witness said, was the best paying line of work for one with no special training to offer, from age 16 to age 21, inclusive, would be $22,485.12, a total earnings from age 10 to age 21, inclusive, of $25,875.12. Appellants put in no evidence on the question of the potential earnings of a boy and young man to age 21. Nor was any objection preserved as to the propriety of such evidence or the qualifications of the witness.

There was uncontradicted evidence that the age of appellee was 63½; that for age 63 his life expectancy by the Actuaries Combined Table was 12.05 years, by the American Experience Table 12.26 years, by the Carlisle Mortality Table 12.81 years; and for age 64 his life expectancy by the Actuaries Combined Table was 11.51 years, by the American Experience Table 11.67 years, and by the Carlisle Mortality Table 12.30 years. The medical and funeral expenses of appellee

amounted to $685.00. Appellee testified that he was the father of four children who were older than the deceased child and that the cost of supporting the latter to his sixteenth birthday would be $35.00 to $40.00 per month, and from age sixteen to age twenty-one, $75.00 to $80.00 per month.

Appellants, in contending that the damages awarded were excessive, urge (1) that the evidence of the executive director possessed no probative value since, in this kind of a case, the matter is one of estimate which bears some semblance to conjecture which the jury must reach "aided by knowledge and experience in the affairs of life" and it is unnecessary to call witnesses as to the value of the child's services; (2) that there is no evidence that appellee intended to "take his son from school" when he became sixteen years of age and the inference to be drawn is to the opposite; and (3) that the circumstances surrounding the death of the child with the attendant "grief, excitement or horror" did "create an undue passion and prejudice in the mind of the jurors and did unjustly influence them" in rendering the verdict.

(1). As before noted, appellants raised and preserved no question as to the competency of the evidence as to the value of the potential services of appellee's deceased child or as to the qualification of the witness to testify with regard thereto. The record evidence discloses not a single objection by appellants to the testimony of the witness, not a single objection to his qualification, and not a single motion to reject or strike his testimony. Appellants here urge that the testimony of the witness was "merely a conclusion" and we should disregard it. We cannot weigh the evidence. That is the exclusive province of the jury. If such testimony consisted of conclusions, proper objections thereto should have been addressed to the court. No point of

error as to such asserted conclusion was made or preserved for our consideration. Without further extension of this point, we may add that the jury, in this case, was authorized, if it chose to do so, to wholly disregard all of such testimony and substitute its own judgment as to the matter. It may have done so. Appellants make no showing that it did not do so; and we are not empowered to presume contrary to its verdict.

(2). Appellants apparently imply that since there is no evidence that appellee intended to cease the child's schooling at age sixteen, the evidence as to the value of his services loses weight because the child might have continued in school beyond that age. Such proposition was one to be submitted to the consideration of the jury, not us. With equal logic and vigor it could be urged that the child might become emancipated prior to his majority. All such matters, in cases of this kind, are for the conclusion of the jury in arriving at the amount of its verdict and to this end it may draw from all the facts and circumstances established by the evidence, including such as shows the ability and capacity of the child to perform services, and it need not find, nor is it required that the evidence show, that the child would, in fact, have performed such services. 67 C. J. S., Parent and Child, Sec. 52, pp. 756 and 757.

(3). If, as appellants claim, there were circumstances surrounding the death of the child of such nature as to create passion and prejudice in the minds of the jurors, they have not pointed it out or made reference thereto. Rather, it seems they conclude that the damages awarded are excessive and, therefore, the jury must have been actuated by something other than evidence. In this connection, they cite and rely on *Elliott* v. *Kraus* (1930), 92 Ind. App. 494, 172 N. E. 783, but that case doesn't fit. In that case the

father brought action for damages for the death of his 3½ year old son allegedly caused by the negligence of the defendant (appellant) and the jury returned a verdict for $8,000.00. The trial court ordered a remittitur of $2,800.00 and rendered judgment against appellant for $5,200.00. On appeal the verdict was held excessive and not cured by the remittitur. The court held there was no proof of negligence and that there was no evidence of loss of services to the father, except what might be inferred from the age of the child, his relationship to the appellee (father) and the circumstances of his death. In the present case we have proof of negligence (not contested on appeal) and uncontradicted evidence of loss of services and the pecuniary value thereof to appellee in addition to evidence of the family condition, the advanced age of father and mother (63½ and 58, respectively); impaired health condition of appellee; his total earnings of $120.00 each two weeks; that appellee supports an invalid daughter and one daughter age twenty years; and that appellee makes home purchase payments of $35.00 per month on a cost thereof of $4,250.00, $1,000.00 of which was "paid down". In estimating appellee's damages the jury may consider the condition of his family at the time of the alleged occurrence causing death of his son. *Ohio Valley Trust Company* v. *Wernke* (1912), 179 Ind. 49, 56, 99 N. E. 734; *City of Elwood* v. *Addison* (1901), 26 Ind. App. 28, 35, 59 N. E. 47; *Terre Haute, Indianapolis and Eastern Traction Company* v. *McDermott* (1924), 82 Ind. App. 614, 616, 145 N. E. 782. The reason for the rule is, of course, that the conditions of appellee's family might be such that the services of the child would be of no value to him, or they might be such as to be very valuable. *The Louisville, New Albany and Chicago Railway Company* v. *Rush* (1890), 127 Ind. 545, 26 N. E. 1010.

Complaint is impliedly made that the verdict here

contested is of such amount as to, at first blush, shock the conscience of the court as being exorbitant. Determination of such contention must, of necessity, involve a consideration of the character or nature of the action, the province of the jury in such an action, the scope of award authorized by the evidence, and the economic trend of the modern day, or, in other words, the comparative purchasing price of the American dollar.

This cause was tried by a jury. Twelve men and women on that jury heard the evidence, saw and appraised the witnesses, and heard the applicable rules of law as given them in the full and complete instructions of the court. It is not to be presumed that they failed to understand or heed the law as given them. The jury, after what we must assume to have been a proper and mature deliberation and consideration of all facts disclosed by the evidence, said that the appellee had been damaged to the extent of $20,000.00. Under our system of law and the constitutional right of the American citizen to a trial by his peers, that verdict must be upheld and safeguarded in the absence of some established legal ground for discarding it. Men may differ as to the quantum of the verdict, but the very fact that men may so differ therewith forms the basic solid foundation of American jurisprudence which has kept the dictator, the tyrant, and the bureaucrat from the seat of high authority.

This is an action for damages for the destruction of a property right. The property right destroyed was the legal right of a father to the earnings of his child until maturity. The child was yet an infant. The very nature of the action, the youth of the deceased, and the uncertainty both of the length of the child's human life and its capacity of attainment while experiencing that life, renders impossible the exact proof of the loss sustained by the parent. As a result,

our law has recognized that such damages are incapable of determination by any mathematical or exact rule and the determination thereof must be left to the wisdom of the jury even though the verdict may be predicated upon a semblance of conjecture. *Clevenger* v. *Kern* (1935), 100 Ind. App. 581, 584, 197 N. E. 731.

There was evidence in this cause which served to furnish an estimate of $25,875.12 as the potential earnings of appellee's unfortunate child. Appellants say, however, that this evidence was unnecessary in this kind of an action. Be that as it may, it was introduced, it was received, without objection. The jury may have believed it, it may not have believed it. We have no way of knowing such fact. Having been received, we know of no rule which prevented its consideration by the jury, along with all the other facts and circumstances exemplified by the evidence, under appropriate instructions by the court. There was also evidence of acts of kindness by the child, his good health, alertness, and good disposition. Such evidence was not disputed by appellants unless it be said that cross-examination constitutes a dispute. No evidence in opposition thereto was put in by appellants. The verdict of $20,000.00 was well within the scope authorized by the evidence. "The rule is well established in this state that where the reasonable amount of recovery is in dispute under the evidence the amount awarded cannot be considered excessive if it is within the scope of the evidence before the court." *First Bank & Trust Company of South Bend, Executor of Estate of Spiro* v. *Tellson* (1954), 124 Ind. App. 478, 484, 118 N. E. 2d 496.

In a very recent case, our Supreme Court, speaking through Chief Justice Emmert, in considering a contention of excessive verdict, said: "It must be remembered that the jury as well as this court is aware of the general inflation and depreciated

and the cheapened value of money". *The New York Central Railroad Company* v. *Johnson, etc.* (1955), 234 Ind. 457, 127 N. E. 2d 603, 607. The same Judge in 1953, in *Lincoln Operating Company* v. *Gillis* (1953), 232 Ind. 551, at page 561, 114 N. E. 2d 873, observed: "In view of the general economic conditions, *chiefly noted for high prices and cheap money*" (our emphasis) the court could not say as a matter of law that a $15,000.00 verdict was based upon prejudice or passion, or evidence not in the record.

Other courts in the land have recently made similar comment in considering a charge of excessiveness of damages. In *Waterloo Sav. Bank* v. *Waterloo, Cedar Falls & Northern R. R.* (Iowa-1953), 60 N. W. 2d 572, 579, the Supreme Court of that state said:

> "The matter of the amount of damages is peculiarly for the jury, and its verdict should not be interfered with unless its wide discretion has clearly been abused. In considering the amount allowed in this case we must keep in mind the depreciation of the United States dollar in the comparatively recent past. *It will now buy little, if any, more than fifty per cent of what it would have purchased ten to fifteen years ago. This makes comparison with any but the most recent cases valueless.* We take judicial notice of this cheapening of the currency, and *we consider the amount allowed by the jury in the light of the lessening buying power of the dollar.* . . . We are unable to say there is a sufficient showing here the award by the jury was unconscionable or so clearly excessive we should interfere." (Our emphasis).

See, also, the following: *Kramer* v. *Portland-Seattle Auto Freight, Inc., et al.* (Wash.-1953), 261 P. 2d 692 ("In fact, the purchasing power of money is now considerably less than half what is was a few years ago") ; *Hazelrigg Trucking Co.* v. *Duvall* (Okla.-1953), 261 P. 2d 204, 209 ("It is everywhere recognized that in recent years courts generally, in passing upon the excessive-

ness or inadequacy of verdicts for damages, have given greater consideration to increased living costs and the impaired purchasing power of the dollar") ; *Stallcup et ux.* v. *Rathburn* (1953), 76 Ariz. 63, 258 P. 2d 821 ("While the verdict is large, it is not, in our opinion shocking or flagrantly outrageous when one considers the decreased value of the dollar") ; *Dahl* v. *North American Creameries, Inc., et al.* (N. D.-1953), 61 N. W. 2d 916, 923 ("The jury also had a right to consider the reduced purchasing power of the dollar. *Dedman* v. *McKinley*, 238 Iowa 886, 29 N. W. 2d 337".) ; *Correia* v. *Van Camp Sea Food Co., Inc., et al.* (Cal.-1952), 248 P. 2d 81, 91 ("In the last decade or more, radical changes have taken place in social conditions, and particularly in conditions affecting the costs of living. Courts have recognized this fact as well as noticing the difference in the purchasing power of money".)

Comparison of the verdict in the present case with recoveries in cases ten, fifteen, or twenty years ago are of little value. As said by the court in *Waterloo Sav. Bank* v. *Waterloo, Cedar Falls & N. R. R.* (Iowa-1953), *supra,* "Both parties cite numerous cases in which we have held the damages were, or were not, excessive. They are of some value for comparison, but this value is limited." And in *Hazelrigg Trucking Co.* v. *Duvall* (Okla.-1953), *supra,* it is said: "It is of no value to review great numbers of cases wherein jury verdicts for damages for wrongful death have been affirmed, affirmed upon condition of remittitur, or set aside as excessive". Verdicts attacked as excessive should not be tested by comparison with other verdicts returned in the long past when economic considerations were far different from those prevailing in modern day. As well might it be said that the trial court should instruct the jury as to prior verdicts which have been upheld in the past in similar or analogous cases.

Cases from foreign jurisdictions are of no authoritative value and are subject to factors peculiar to the particular jurisdiction. However, they may serve to illustrate the present tendency toward verdicts bearing comparable relationship to the prevailing upward trend of the modern economy. For such as may be interested, we pause to note a few which have been observed. *Gorin* v. *State* (1952), 117 N. Y. S. 2d 177, 183, point 11. ($23,-000.00, less $8,000.00 received from another source. 18 year old son.) *Watson* v. *Powell, et al.* (1944), 267 App. Div. 1029, 48 N. Y. S. 2d 31, 32. ($15,000.00. 8 year five month old boy.) *Dixie Greyhound Lines, Inc.* v. *Woodall* (1951), U. S. C. A., 188 F. 2d 535. ($20,000.00, 6 year old boy.) *Correia* v. *Van Camp Sea Food Co., Inc., et al.* (1952), *supra.* ($42,500.00. 18 year old son. Kind to parents who would have claim on his earnings. See points 19, 20, 21, 22, and 23.) *Louisville & N. R. Co.* v. *Whisenant, et al.* (Miss.-1952), 58 So. 2d 908, 912, points 6-7. ($20,000.00. 12 year old boy.) *Hord* v. *National Homeopathic Hospital* (D. C.-1952), 102 F. Supp. 792, 796, points 8, 9. ($17,000.00. Newborn infant.) *Turner* v. *Hall's Adm'x.* (Ky.-1952), 252 S. W. 2d 30, 34, point 9. ($20,000.00. Daughter, senior in high school.) *Bumgardner* v. *Allison, et al.* (1953), 238 N. C. 621, 78 S. E. 2d 752, 756, points 5, 6. ($25,000.00. Eleven year old girl). *F. A. Croninberg, Admr.* v. *United States* (U. S. D. C. 1954), 123 F. Supp. 693, 701, 702, 703, points 11 to 18, incl. ($35,000.00. 16 year old boy. Action under Federal Tort Claims Act.) *Hampton, et al.* v. *United States* (U. S. D. C.-Nev. 1954), 121 F. Supp. 303, 306, 307, 308. ($20,000.00. 25-month old daughter).

Nor should verdicts be tested by the feelings of the reviewing tribunal. Jury verdicts fixing damages should be accorded no different weight than those which determine any question of fact. *Kramer* v. *Portland-Seattle Auto Freight, Inc., et al., supra.*

That the verdict may appear to some to be excessive is not the criterion for the admeasurement thereof. ". . . an exaggerated measurement of damages in a field in which the ideas of reasonable men may differ does not of itself lead to the conclusion that the verdict was based upon motives improper for the jury to entertain . . .". *Miller* v. *Condon,* 66 Ariz. 34, 182 P. 2d 105, 109. The true test, the criterion that has withstood the rigors of one hundred forty-four years of passing time, is that laid down by Chancellor Kent in the now venerable case of *Coleman* v. *Southwick* (1812), 9 Johns., (N. Y.) 45, 6 Am. Dec. 253:

> "It is not enough to say, that in the opinion of the court, the damages are too high and that we would have given much less. It is the judgment of the jury, and not the judgment of the court, which is to assess the damages in actions for personal torts and injuries. . . . The damages, therefore, must be so excessive as to strike mankind, at first blush, as being, beyond all measure, unreasonable and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice, or corruption. In short, the damages must be flagrantly outrageous and extravagant, or the court cannot undertake to draw the line, for they have no standard by which to ascertain the excess."

We have said that appellants have pointed to no factor upon which their claim of excessiveness is predicated other than that the verdict is for $20,-000.00. We have recounted that the verdict is within the scope of the evidence ". . . the burden is with him who assails the amount of the verdict to show that it is wholly unsupported by the evidence, or that the jury was influenced by passion (or), prejudice, and that the amount of the award is such as to 'shock the judicial conscience'. . . . When the verdict rendered is approved by the trial court and has

a reasonable relation to the damages proven, it should not be disturbed". *Florida Power & Light Co.* v. *Robinson* (Fla.-1953), 68 So. 2d 406, 415.

> "In order to justify the granting of a new trial on the ground that the amount of the verdict is excessive, the fact that the award is excessive must be plain or evident. It is not sufficient for the party seeking a new trial merely to raise a doubt as to whether the damages are too large, he must show affirmatively and satisfactorily, that they are so and to what extent". 39 Am. Jur., New Trial, Sec. 144, page 150.

Appellants, in our opinion, have not sustained this burden.

Bearing in mind the character and nature of this action, the conceded difficulty of exact proof of damage with the result that it must rest largely in estimation, the consequent wide discretion accorded the jury in such matter, the fact that each case of this kind depends, to a large extent, upon its own facts and circumstances made apparent by the evidence, the uselessness, in causes of this nature, of comparison of verdicts, and the acknowledged and recognized depreciated status of the modern dollar, we are impelled that the verdict was not the result of passion or prejudice on the part of the jury and that it was not "flagrantly outrageous and extravagant".

The appellants have shown no reversible error. Therefore, the judgment appealed from is affirmed.

Pfaff, P. J.—Not participating.

### On Petition for Rehearing

Kelley, J.—Appellants assert in their petition for rehearing that we erred in holding that Burns' Stat., §§2-404 and 2-217 "are not in *pari materia* and need not be construed together", and that we thereby contra-

vened the "later" precedent of the Supreme Court. We will refer to the cases cited by appellants in a subsequent portion of this opinion.

As we understand the contention of appellants, as expressed in their original brief and in the petition for a rehearing, it is not that they urge simply a construction together of the said sections of the statutes in order to arrive at the legislative intent and purpose in the enactment of either, but rather that, under the guise of the doctrine of *pari materia,* we transplant a limitation provided for in §2-404 and engraft it upon said §2-217.

In our original opinion we held that the parent's act (§2-217, Burns' 1946 Replacement) was clear and unambiguous and that no reason appeared for the application of the doctrine of *pari materia.* Appellants say that we, by such holding, contravened a ruling precedent of the Supreme Court and cite as establishing such precedent the cases of *Berry, Adm'r.* v. *The Louisville, Evansville and St. Louis Railroad Co.* (1891), 128 Ind. 484, 28 N. E. 182, and *Thornburg* v. *The American Strawboard Company* (1895), 141 Ind. 443, 444, 40 N. E. 1062. As a case from our own court they cite *Elliott* v. *Brazil Block Coal Co.* (1900), 25 Ind. App. 592, 58 N. E. 736.

We think it meets with general approval to say that a decision is a precedent for the doctrine necessarily involved in it and not necessarily a precedent for the pronouncements of the judge or judges who wrote it. To determine whether a case is a precedent for a stated proposition and therefore to be adhered to under the rule of *stare decisis,* it is proper to ascertain the exact point or points before the court for adjudication and seek, in the opinion, the doctrine announced or followed by the court, without which the point could not be correctly decided. All else in the opinion is merely the reasoning or explanation of the

court and attains the dignity of neither doctrine nor precedent.

The precise question before the court in the Berry case, referred to above, was whether an allegation in a complaint that an infant decedent "for two months before and at the time of his death . . . was not in the service of his parents, or of either of them" was sufficient to show an emancipation of the infant so as to establish the right of the infant's father to maintain the action in his capacity as administrator "of his deceased minor son." The court held such allegation to be insufficient. That was the doctrine of that case and the case stands as a precedent for that rule. We did not contravene that precedent by our holding. No such question was before us. In the course of its opinion the court made the statement that it had been decided by the cases referred to by the court that the parent's right section and the wrongful death section of the statute "are to be construed together". Such statement was not only unnecessary to the court's decision of the particular question before it, but the cases relied upon by the court do not support the broad statement of the court. We dealt with all such cases in our original opinion. For instance, the court cited and relied upon the case of *The Louisville, New Albany and Chicago Railway Company* v. *Goodykoontz, Guardian* (1888), 119 Ind. 111, 21 N. E. 472, wherein the court said that said two sections were entirely disconnected, and each is to be "construed independently of the other". Our research discloses that the Goodykoontz case has been consistently followed and approved down to the latest available citations. The same is found true of the holding in *Mayhew* v. *Burns* (1885), 103 Ind. 328, 2 N. E. 793, which was also relied upon by the court in the said Berry case.

The question before the court in the Thornburg case, cited above, relied upon as a precedent by appellants, as

stated above, was whether a man who married the mother of a bastard child and took it into his home as a member of the family, could recover for the death of the child, when caused by the wrongful act of another. The court held that the action could not be maintained by the plaintiff since he was not the father of the deceased child. Such was the doctrine of that case and the rule for which it exists as a precedent. Incidental to its opinion, the court adopted the same words used in the said Berry case and cited said Berry case. In neither the Berry case nor the Thornburg case was any reference to the wrongful death act or joint construction necessary for the court's decision.

We do not regard either said Berry or Thornburg case as a precedent for the rule urged by appellants. If appellants' position be sound, then we, in writing our original opinion, would have been in the discomforting position of being confronted by two contra lines of authority established by the Supreme Court, necessitating our contravention of ruling precedent, regardless of the conclusion reached by us. Our investigation has raised no authority even suggesting that the two cases relied upon by appellants had any influence upon the holdings in the said Goodykoontz and Mayhew cases. It would seem, then, that the rule established in the said Mayhew and Goodykoontz cases remains the law of this state.

A cursory reading of the *Elliott v. Brazil Block Coal Co.* case, *supra,* relied upon by appellants, leads to the early conviction that it lacks the stability of a ruling precedent for the position taken by appellants. No petition to transfer said case was presented to the Supreme Court and, therefore, if it be construed as holding the doctrine declared for by appellants, then it contravened the holding of the Supreme Court in the said Goodykoontz and Mayhew cases. Insofar as the Elliott case holds as a general rule that statutes in *pari materia*

must be construed together, it merely followed a long line of authorities so holding. We, of course, are bound by such general rule where the circumstances are such as render appropriate its application.

Appellants also say in their petition for rehearing that we erred in holding that the trial court did not err in refusing to give the two instructions mentioned in the original petition and that we erred in not holding the verdict to be excessive. We presently conceive no reason for altering our original opinion.

Petition for rehearing denied.

Pfaff, P. J., not participating.

NOTE.—Reported in 133 N. E. 2d 900.

Rehearing denied 134 N. E. 2d 705.

Transfer denied, Achor, C. J., dissents.