HOWARD CHILDS *v.* EUGENE RAYBURN, JR., ADMINISTRATOR OF THE ESTATE OF STEVEN D. RAYBURN, DECEASED.

[No. 1-1275A223. Filed May 12, 1976. Rehearing denied June 18, 1976. Transfer denied November 4, 1976.]

*Harold H. McConnell, Hamilton & McConnell,* of North Vernon, for appellant.

*Robert J. Brown,* of North Vernon, for appellee.

LOWDERMILK, J.—The proceedings leading to this appeal were initiated when plaintiff-appellee (Rayburn) filed an action against appellant (Childs) for the wrongful death of his son, Steven. This action was filed by Rayburn as administrator of Steven's estate, and alleged that Childs, as Steven's employer, permitted Steven to remain in an open field in spite of an approaching thunderstorm. Rayburn alleged that this act of negligence resulted in Steven being struck and killed by a bolt of lightning.

Child's answer first requested dismissal of the action for failure to state a claim. However, the exact nature of the alleged failure is not set forth in the answer or other papers. Childs also denied several paragraphs of the complaint and requested Rayburn take nothing by his action.

At the trial of the cause, after Rayburn had rested, Childs filed a Motion for Judgment on the Evidence, which alleged, first, that Rayburn as administrator was not the proper party to maintain an action for the death of an unemancipated minor, and, second, that the evidence established that the sole proximate cause of Steven's death was an Act of God— lightning. The trial court denied the motion as to count two (2) at once, and, after further deliberation, sustained count one (1). Also at this time, Rayburn's motion to amend the complaint was granted, and Rayburn as guardian was substituted in place of Rayburn as administrator.

The evidence at trial revealed that on the day of Steven's death, Steven, another youth and Childs were in an open hay field, with Childs driving a tractor, and Steven and the other

youth riding on a wood and metal wagon. Steven was engaged in stacking bales of hay on the wagon as they came from the baling machine which was also being pulled by the tractor. Just prior to the lightning strike, the wagon had been stopped on a small rise to adjust the load, and Steven was working on top of the wagon while the others were on the ground assisting him.

Childs did not testify, but the other young worker stated that when Steven was struck down, it was not raining, and that it was partly sunny before Steven's death. He also stated that he was unaware of thunder or gathering clouds, but that this may have been due to the noise of the baler, and his haste to keep up with his work.

Other witnesses who were near the field the day of Steven's death testified that they saw and heard an approaching storm and that they ceased their various activities in order to seek shelter. The testimony of these witnesses indicated that the storm was not unusually large or fast-moving.

Finally, Rayburn's expert witness testified, *inter alia,* that lightning takes the shortest path to the ground, and thus will usually strike the highest object in the area. The expert further stated that one of the best and easiest ways to protect against lightning was to take shelter—and this included moving out of open fields where the human form could be the highest object.

After all of the evidence, the jury returned a verdict for Rayburn, and awarded five thousand dollars ($5,000.00) damages.

## I.

*Was Steven's death the result solely of an "Act of God?"*

Child's first argument is that there was no evidence whatsoever that he was negligent or that his negligence, if any, was the proximate cause of Steven's death. Childs contends that no one present in the field established any acts or omissions amounting to negligence, and

that to impose liability would hold him to an impossible standard which requires that he be able to predict the time and place of a lightning bolt. Thus, Childs asserts that the lightning was not foreseeable, and that his failure to foresee the same could not have been the proximate cause of Steven's death.

> "An 'act of God' has been variously defined or referred to as an unusual, extra ordinary, sudden, and unexpected manifestation of the forces of nature which man cannot resist; an extraordinary convulsion of nature or a direct visitation of the elements, against which the aids of science and skill are of no avail; an accident produced by physical causes which are irresistible, and a natural necessity, which could not have been occasioned by the intervention of man, but proceeds from physical causes alone. There are also minor variations of the above definitions, but on the whole, the more commonly recognized view today seems to require a direct, violent, and irresistible act."

1 Am. Jur. 2d Act of God, § 1 (1962), footnotes omitted. Our own courts have defined an "Act of God" as follows:

> ". . . An act of God is the manifestation of a superhuman power which breaks the chain of causation in the realm of human activity. It upsets the best-laid plans of men and spoils all their calculations. Because its coming is beyond the scope of man's prevision and its power beyond his strength to resist, he is not liable for the consequences thereof. . . ." *Chicago and Erie Railway Co.* v. *Schaff Brothers Co.* (1917), 74 Ind. App. 227, 230, 117 N.E. 869.

Also, see the cases collected at Annot., 62 A.L.R. 2d 796, §§ 1, 5 (1958).

There can be no question that lightning is an "Act of God" as defined above. Further, in the case at bar, it is clear that the actual and direct cause of Steven's death was a lightning bolt. We cannot agree, however, that such a conclusion dictates that we forego further review of this issue.

Over half a century ago this court, in *Sarber* v. *City of Indianapolis* (1920), 72 Ind. App. 594, 600, 126 N.E. 330, stated:

> "It is settled that where several causes, dependent or independent of each other, all contribute to an injury, an

action may, in a proper case, be founded upon all or any of the causes (*Louisville, etc., R. Co.* v. *Hicks* [1894], 11 Ind. App. 588, 37 N.E. 43, 39 N.E. 767), and that where two causes combine to produce an injury, both being proximate, one the result of negligence, the other an incident, as to which neither party is at fault, the negligent party is liable if the injury would not have happened but for such negligence. *Toledo, etc., R.Co.* v. *Tapp* (1892), 6 Ind. App. 304, 33 N. E. 462."

This principle has been re-stated several times by the courts of this State: *Inland Steel Co.* v. *King* (1915), 184 Ind. 294, 110 N.E. 62; *Elder* v. *Fisher* (1966), 247 Ind. 598, 217 N.E.2d 847; *New York Cent. R. Co.* v. *Cavinder* (1965), 141 Ind. App. 42, 211 N.E.2d 502; *Krohn* v. *Shidler* (1966), 140 Ind. App. 175, 221 N.E.2d 817.

This concept of concurring negligence or causation is applicable to those situations where one of the two proximate causes of injury is an Act of God and the other is ■ personal negligence. In 1 Am. Jur. 2d Act of God, § 2 (1962) the proposition is stated as follows:

"A careful analysis of the various definitions of an act of God discloses that practically all agree in requiring the entire exclusion of human agency from the cause of the injury or loss. Where an intervening human agency *contributes* to cause the damage complained of, such damage cannot be said to have been caused by an act of God. Nor can the defense that the damage complained of was the result of an 'act of God' be successfully made where the injury could have been avoided by precaution. In other words, a casualty cannot be considered an act of God if it results from, *or is contributed to,* by human agency, *and that which may be prevented by the exercise of reasonable diligence* or ordinary care is not an act of God."
(Our emphasis, footnotes omitted.)

The courts of this State have recognized those situations where an Act of God may concur with human negligence, and have held that the negligence may result in liability for any injury occurring as a consequence of the combined forces.

". . . If, then, an unforeseen danger arose due to conditions which could not have been anticipated and caused damage

to the property of appellant, the liability of appellees must be, settled by determining whether or not the negligent failure of appellees to provide against the dangers which could have been reasonably anticipated was the proximate cause of the danger which actually arose by reason of a condition that could not have been reasonably foreseen. If due care in providing against dangers which could have been reasonably anticipated would have prevented or avoided the unforeseen danger which actually arose and caused the injury, then, the negligence in failing to use such care must be regarded as the proximate cause of the injury if acting alone, and if acting in conjunction with another force, such as the act of God, it must be deemed a concurring proximate cause. On the other hand, if the observance of due care in providing against known dangers would not have prevented or turned aside the danger which arose and produced the injury, then, the failure to observe such care could not be regarded as a proximate cause of the injury." *Watts* v. *Evansville, etc. R.Co.* (1921), 191 Ind. 27, 53, 129 N.E. 315.

". . . In such a case as this, however, a defendant may be liable for the damages caused by the waters of a flood. In its relation to resulting damages a flood is classed as an act of God in a legal sense with the consequent immunity of man from liability, only in the absence of human agency wrongfully or negligently contributing to produce the injury complained of. (Citation omitted.)

"Where the injury complained of is to some extent the result of the wrongful or negligent participation of man, the consequences are regarded as exclusively of human origin in so far as concerns the question of liability, and the situation is removed from the scope of the rules that govern in case of the acts of God. (Citations omitted.)

"In a case involving an act of God, but where a human agency negligently applied intervenes to produce the injury, the act of God is regarded as the remote rather than the immediate cause of the injury, and recourse cannot be had to it as a legal excuse. (Citations omitted.)

"Where lands were damaged by the overflow of waters from a canal, and where the overflow would not have occurred but for the negligent act of the canal owner in permitting a sand bar to form in the canal, the injury cannot be attributed to an act of God. (Citation omitted.)" *Zollman* v. *Baltimore, etc., R. Co.* (1918), 70 Ind. App. 395, 415, 121 N.E. 135.

We believe the principles stated above are fully applicable to the case at bar. Thus, while it was uncontested that Steven was struck down by lightning, there remained the question of whether Childs was concurrently negligent in allowing or requiring Steven to remain in an open field, unprotected from the impending storm. If the evidence establishes such negligence, Childs, under the above-stated theory, could be considered the "immediate" proximate cause of Steven's death. Therefore, it was not error for the trial court to deny that part of Childs' motion for judgment on the evidence which was based on the proposition that an Act of God negates liability for concurring human negligence.

## II.

*Did the court err in allowing Rayburn to amend his complaint to include the real party in interest?*

Childs contends that the trial court committed reversible error when, after the close of plaintiff's evidence, it permitted Rayburn to amend his complaint so that Rayburn as guardian was substituted as the complaining party.

It is argued that the evidence does not establish that Steven was emancipated, and that, therefore, the only proper party to bring the present action was the father or parent. Thus, the argument continues that inasmuch as Childs raised the issue by the motion to dismiss in his answer, and no action was timely taken by Rayburn, the statute of limitations for Rayburn's action *as a father* had run when the amendment was allowed.

Appellant is correct that only the parent of an unemancipated child can maintain an action for his child's injury or death. IC 1971, 34-1-1-8 (Burns Code Ed.) ;[1] *Ruckman* v. *Pinecrest Marina, Inc.* 367 F. Supp. 25 (N.D. Ind. 1973). We are here called upon to decide the effect of TR. 15(A) and TR. 17(A)(2) upon the above

---

1. This section was amended by Acts 1975, P.L. 316, § 1.

statute and IC 1971, 34-1-22 (Burns Code Ed.), which provides that actions such as the one at bar must be brought within two (2) years.

TR. 12(B)(6) expressly states that objections or defenses may include:

"(6) Failure to state a claim upon which relief can be granted, which shall include failure to name the real party in interest under Rule 17,"

Childs maintains that his motion to dismiss for failure to state a claim, which was filed with the answer in 1970, was based on the failure of Rayburn to name the real party in interest as plaintiff; that the complaint did *not* clearly establish that Steven was emancipated; and that the subsequent amendment in 1974 was not within a reasonable time after the initial objection, nor within the statute of limitations.

We believe that Childs' motion to dismiss was properly denied. Our decision on this point is supported by the following language from *State* v. *Rankin* (1973), 260 Ind. 228, 294 N.E.2d 604, 606:

". . . When no evidence has been heard or no affidavits have been submitted, a 12(B)(6) motion should be granted only where it is clear from the *face* of the complaint that under no circumstances could relief be granted. The above stated principles concerning TR. 12(B)(6) generally are equally applicable to a TR. 17(A) real party in interest objection brought under TR. 12(B)(6)." (Original emphasis.)

*See also, Gentry* v. *United Slate, Tile & Constr. Roofers, etc.* (1974) 162 Ind. App. 246, 319 N.E.2d 159; *Pitts* v. *Mills* (1975), 165 Ind. App. 646, 333 N.E.2d 897.

In the case at bar, the motion to dismiss did not specify the grounds therefor. In addition, Childs does not allege or prove that an affidavit or other evidence was submitted in order to clarify and explain the basis for the motion. Thus, just as in *Rankin,* we believe that the motion could have been granted only if it appeared to a certainty that relief could not have been granted under any set of facts. We find that the question

of Steven's emancipation, and thus the question of the real party in interest, could not have been decided from the face of the complaint—i.e., the complaint did not clearly demonstrate that the administrator of Steven's estate was *not* the real party in interest. Therefore, the court properly denied the motion and permitted evidence on the subject. We must now decide whether the subsequent amendment to the pleadings was improper.

As noted above, the pleadings were eventually amended after Childs' motion for judgment on the evidence was granted in part. The trial court agreed with Childs that the action was being prosecuted by the wrong party, but along with granting the motion it also granted Rayburn leave to amend his pleadings. Over Childs' objection, the name of the real party in interest was substituted on the pleadings.

We conclude that the trial court committed no reversible error in allowing the amendment. TR. 15(A) states, in part, that:

"Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; *and leave shall be given when justice so requires.* A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within twenty [20] days after service of the amended pleading whichever period may be the longer, unless the court otherwise orders." (Our emphasis.)

In addition, TR. 17(A)(2) states, in pertinent part:

"No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonbale time after objection has been allowed for the real party in interest to ratify the action, or to be joined or substituted in the action. *Such ratification, joinder, or substitution shall have the same effect as if the action had been commenced initially in the name of the real party in interest.*" (Our emphasis.)

The objection by Childs at the midpoint of the trial was timely. *See*, 2 Harvey, INDIANA PRACTICE, Civil Code Study Commission Conmments, p. 207 (1970). However, given the facts that Childs did not request a

continuance to deal with the substitution or otherwise respond to the amendment as would be permitted under TR. 15(A); that no parties were added or removed; that the amendment was prompt and without confusion or ambiguity; and that the evidence and proof involved was unchanged by the amendment, there was no prejudice in granting the motion to amend. Indeed, justice required it, since a dismissal would have probably resulted in another trial of the same issues.

Moreover, TR. 17(A)(2), *supra*, disposes of Childs' argument that the statute of limitations would bar Rayburn's entry into the action as Steven's guardian. When the real party in interest is substituted within a "reasonable time" after the objection, the rule clearly states that such substitution has the same effect as if the action had been "commenced initially" by the proper party. We have held above that the substitution was proper, and now hold that said substitution placed Rayburn, as guardian and plaintiff, within the statute of limitations.

## III.

*Was Rayburn's instruction number one (1) confusing, prejudicial and inapplicable to the evidence?*

It is Childs' third argument that the trial court erred in giving Rayburn's instruction number one (1), which reads as follows:

"In an action for wrongful death by a parent for the death of his minor child, the parent is entitled to recover only for the pecuniary injury he has sustained. The measure of damages to be recovered is the value of the child's services from the time of his death until he would have attained his majority (age twenty-one) taken in connection with his prospects in life less the cost of support and maintenance during that period, including board, clothing, schooling and medical attention.

"In estimating a parent's damages for the wrongful death of a minor child you may properly consider the following as elements of damages:

1. Loss of care.

2. Loss of love and affection.
3. Loss of support and maintenance.
4. Loss of parental training and guidance.
5. The condition of the family and the pecuniary value of all acts of kindness and attention which may reasonably be anticipated that the child would have performed for the parent and his family until his majority.

"Other elements of damages are:
1. The necessary and reasonable value of hospitalization or hospital service (if any).
2. Medical expense.
3. Funeral expense."

Childs contends the instruction improperly states the law, was inapplicable to the evidence, and confused the jury as to the proper standard to be used in such cases.

Rayburn responds by generally denying Childs' argument, and also asserts that his instruction number nine (9) corrected any confusion:

"Where the relationship of parent and child exists between the decedent and the person for whose benefit a wrongful death action is being brought there is a presumption that such person has suffered pecuniary loss as a result of that decedent's death.

Under the wrongful death statute a recovery may be had only for the pecuniary loss sustained. A pecuniary loss may be either a loss arising from the deprivation of something to which the decedent's heirs (the parents) would have been legally entitled if he had lived, or a loss arising from a deprivation of benefits which, from all the circumstances of the particular case, it would be reasonably expected that his parents would have received from the decedent had his life not been taken, although the obligation resting on him to bestow such benefits on them may have been a moral obligation only."

The generally accepted measure of damages in an action for the wrongful death of a child is set forth in *Hahn* v. *Moore* (1956), 127 Ind. App. 149, 158, 133 N.E.2d 900, 904, as follows:

"Appellants' brief quotes, in effect, the rule that the measure of damages in a case of this kind is the value of the child's services from the time of death until he would have attained his majority, taken in connection with his prospects in life less the cost of his support and maintenance during that period, including board, clothing, schooling and medical attention. To this may be added, in proper cases, the expenses of care and attention to the child, made necessary by the injury, funeral expenses and medical services. (Citations omitted.) Appellants also add that the jury may consider the condition of the decedent's family and the pecuniary value of all acts of kindness and attention which the deceased child might reasonably be anticipated to render until its majority. But that the parent has been deprived of the happiness, comfort, and society of the child or has incurred physical or mental suffering or pain by reason of loss of the child, may not be considered by the jury. We find no reason to question appellants' statement as to the measure of damages and the matters which may and may not be considered by the jury."

*See also, Siebeking et al.* v. *Ford, Admx., etc.* (1958), 128 Ind. App. 475, 148 N.E.2d 194; *Wallace* v. *Woods* (1971), 149 Ind. App. 257, 271 N.E.2d 487.

In addition to the above standard relating to damages, we must consider other well established guidelines with regard to the propriety of instruction number one (1) and all of the instructions together.

First, it is generally accepted that:

". . . the error of a bad instruction is not cured by the giving of correct instructions on the same subject. Such instructions are not to be viewed as a whole, with this court on appeal left to determine which of the contradictory instructions the jury should reasonably have believed." *Deckard* v. *Adams* (1965), 246 Ind. 123, 127, 203 N.E.2d 303, 306.

However, where the instructions are not actually contradictory, it has been often stated:

"Juries are composed of men and women of reasonable intelligence and understanding, and courts recognize that they are able to understand the import and meaning of the instructions given to them.

"The rule is firmly established that if, 'considering all of the instructions together, it fairly appears that the law was stated with substantial accuracy, so that the jury could not have been misled, no ground for reversal is presented, even though a particular instruction, or some detached portion thereof may not be precisely accurate.' *Cooper* v. *The State* (1889), 120 Ind. 377, 22 N.E. 320; (Other citations ommitted)

"As stated in Indiana Trial and Appellate Practice, Flanagan, Wiltrout and Hamilton, § 1510(6), 'Instructions given in a case must be considered as a whole and with reference to each other and not as isolated individual instructions.' *Bain, Admx.* v. *Mattmiller* (1938), 213 Ind. 549, 13 N.E.2d 712; *Carter* v. *Aetna Life Ins. Co.* (1940), 217 Ind. 282, 27 N.E.2d 75."

*Burks* v. *Walters* (1957), 127 Ind. App. 358, 367, 141 N.E. 2d 872, 877.

Guided by the above, we first conclude that the instructions are not contradictory, and we are not, therefore, restricted to considering only the allegedly bad instruction. Rather, we will consider all of the instructions to determine whether the jury was properly charged.

The first and third paragraphs of the challenged instruction closely follow the quotation above from *Hahn* v. *Moore,* and are essentially correct. The second paragraph appears to be an attempt to rephrase and separate into distinct sentences the various elements of damages which are mentioned in the *Hahn* quotation following the omitted citations. Thus, for example, "loss of love and affection" as stated in the instruction is basically the same thing as "acts of kindness and attention" as stated in *Hahn*. Thus, while we might prefer that the instruction more closely adhere to the language in the case, we nonetheless conclude that the instruction is not prejudicially confusing or misleading. While the instruction does re-state the law, it does not mis-state it.[2]

---

2. We might agree that certain "detached portion(s)" of instruction one may not be "precisely accurate." *Burks, supra.* However, we have considered the instruction in its entirety, as would the jury, and have not focused on one particular portion.

Finally, we believe that instruction number nine (9), *supra,* although not really necessary in light of our construction of instruction number one (1), does serve to emphasize that the recovery may be had only for pecuniary loss. The instruction is not otherwise misleading or confusing, and we believe that by this and all of the other instructions the jury was adequately advised of the elements of damages to be considered.

## IV.

*Was the jury's verdict contrary to the evidence?*

Childs next argues that the evidence "unquestionably" established that lightning was the sole cause of Steven's death. It is contended that there was no evidence that Childs was aware of the storm, and that his only connection with Steven's death was that he happened to be present when Steven was struck down.

In Part I, *supra,* we noted that one may be liable for the injury resulting from an Act of God where negligent acts or omissions contribute to the injury. Thus, where one fails to observe reasonable precautions for his or another's safety in the face of possible or probable natural calamities, liability may result. *Sarber* v. *City of Indianapolis, supra; Watts* v. *Evansville, etc., R. Co., supra; Zollman* v. *Baltimore, etc., R. Co., supra.*

We therefore conclude that it was for the jury to decide whether, from all the facts, it was unreasonable for Childs to require or request Steven to remain in the hay field.

The evidence most favorable to Rayburn, as set forth above, reveals the presence of the storm, the nature of the field and equipment, and the location of the parties present when the lightning struck. Also, several witnesses made clear the customary safety precautions which should be taken when an electrical storm is approaching.

We agree with Childs that one witness testified that he did not observe the storm approaching. However, this merely

points out a conflict in the evidence, and it is not our duty to resolve such conflicts. *Lou Leventhal Auto Co., Inc. v. Munns* (1975), 164 Ind. App. 368, 328 N.E.2d 734.

Given the above, we now hold that there is sufficient evidence to support the jury's conclusion that Childs, as Steven's employer, was negligent in not observing the storm; and in not moving or requesting that Steven move to a place of shelter thereby exposing Steven to the lightning which eventually struck. *Lou Leventhal Auto Co., Inc. v. Munns, supra.* By this holding we also necessarily conclude that the decision was not contrary to law. *Senst v. Bradley* (1971), 150 Ind. App. 113, 275 N.E.2d 573.

## V.

*Were the damages of $5,000 unsupported by the evidence?*

Childs argues that the only evidence of damages was that of funeral expenses which totaled $1,216.17. Childs contends there was no evidence of the value of Steven's services or his future prospects in life and that the award is, therefore, unsupported by the evidence.

In reviewing this final argument, we do not have the benefit of citation to authority by Childs. This failure is itself sufficient reason to foreclose further discussion. Indiana Rules of Procedure Appellate Rule 8.3(A)(7). However, preferring to dispose of all issues herein on their merits, we will proceed.

Evidence at trial established that Steven was in good health at the time of his death. He helped around the house with various chores, and also maintained periodic part time jobs outside the home. Further it was proven that Steven was sixteen (16) years of age at the time of his death, and that the family had experienced no unusual problems in rearing him.

Thus, contrary to Childs' contention, there was evidence bearing on the very elements of damages set forth in *Hahn v. Moore, supra*: loss of services; funeral expenses; and "acts of kindness and attention." What value is to be assigned to

each element is solely the task of the jury. Certainly, the process is far from precise, yet the very nature of the action prohibits precision in allocating and awarding damages. *Hahn* v. *Moore, supra; Allison* v. *Boles* (1967), 141 Ind. App. 592, 230 N.E.2d 784.

Childs does not argue that the award is excessive, and we now hold that the award of $5,000.00 was supported by sufficient evidence. *Allison* v. *Boles, supra; Gene B. Glick Co., Inc.* v. *Marion Constr. Corp.* (1975), 165 Ind. App. 72, 331 N.E.2d 26, transfer denied.

Finding no reversible error, the judgment is hereby Affirmed.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 346 N.E.2d 655.