Robert BOLAND, Administrator of the Estate of Lee Boland, Deceased, and Robert Boland, Appellant (Plaintiff below),

v.

Earl F. GREER, Appellee (Defendant below).

No. 3–479A109.

Supreme Court of Indiana.

July 13, 1981.

Frank J. Galvin, Jr., Galvin & Galvin, Hammond, for appellant (plaintiff below).

James J. Nagy, Paul A. Rake, Eichhorn, Eichhorn & Link, Hammond, for appellee (defendant below).

John P. McQuillan, Samuel J. Bernardi, Jr., Robin D. Pierce, Spangler, Jennings, Spangler & Dougherty, P. C., Merrillville, for amicus curiae, Indiana Defense Lawyers Ass'n, Inc.

Jeffrey A. Cooke, Cooke & Bache, Lafayette, for amicus curiae, Indiana Trial Lawyers Ass'n.

Petition to Transfer Denied [For opinion of Court of Appeals see 409 N.E.2d 1116]

ON PETITION TO TRANSFER

HUNTER, Justice, dissenting to denial of transfer.

I must respectfully dissent from this Court's refusal to grant Boland's petition to transfer. In so acting, we perpetuate here today a wholly anomalous rule of law which, but for its roots in *stare decisis*, has no legal or factual basis. That rule is that the assessment of damages suffered by a parent for the wrongful death of a child cannot include the parent's loss of love, affection, and companionship. I would grant transfer and vacate the opinion of the Court of Appeals, *Boland v. Greer*, (1980) Ind.App., 409 N.E.2d 1116, wherein that court reaffirmed the above rule.

The prohibition against a parent's recovery for the loss of love, affection, society, and companionship which accompanies the wrongful death of a child is, as I have described it, anomalous to the case law which surrounds it. This Court has recognized that a parent's loss of companionship and mental suffering occasioned by the *abduction* of a minor child were compensable injuries. *Montgomery v. Crum*, (1928) 199 Ind. 660, 161 N.E. 251. This Court has held that a parent could recover damages for injured feelings and family dishonor resulting from the *seduction* of a daughter. *Felkner v. Scarlet*, (1867) 29 Ind. 154; *Pruitt v. Cox*, (1863) 21 Ind. 15. And this Court has recognized that a child's loss of love and affection occasioned by the *wrongful death of a parent* is a compensable injury. *American Carloading Corp. v. Gary Trust & Sav. Bank*, (1940) 216 Ind. 649, 25 N.E.2d 777; *Richmond Gas Corp. v. Reeves*, (1973) 158 Ind.App. 338, 302 N.E.2d 795.

*American Carloading Corp., supra*, as well as *Richmond Gas Corporation v. Reeves, supra; State v. Daley*, (1972) 153 Ind.App. 330, 287 N.E.2d 552, and *New York Central Railroad Company v. Wyatt*, (1962) 135 Ind.App. 205, 184 N.E.2d 657, stand for the proposition that the loss of love and affection are compensable under the general wrongful death statute, Ind. Code § 34–1–1–2 (Burns 1973). It is only under the statute relevant here, Ind.Code § 34–1–1–8 (Burns 1973), which specifically governs actions for the wrongful death of a minor child, that such injuries are not compensable-in-law. *Louisville, N.A. & C. Ry. Co. v. Rush*, (1891) 127 Ind. 545, 26 N.E. 1010; *Siebeking v. Ford*, (1958) 128 Ind. App. 475, 148 N.E.2d 194; *Hahn v. Moore*, (1956) 127 Ind.App. 149, 133 N.E.2d 900.

*But see Childs v. Rayburn,* (1976) 169 Ind. App. 147, 346 N.E.2d 655.[1]

What is the reason for the rule? Why the distinction between the general and specific wrongful death statutes? It is not by virtue of any language which the legislature employed in either statute; both are silent on the subject.

Rather, the prohibition is directly attributable to the common law rule that parents have a "property right" in their minor child's services. *Louisville, N.A. & C. Ry. Co. v. Rush, supra; Siebeking v. Ford, supra; Hahn v. Moore, supra.* The court in *Siebeking* explained:

> "The right of a parent to the services of his minor child is a property right. * * *
> In *Hahn v. Moore, supra,* this court said:
>> " 'The right of a parent to the services of his minor child is a property right and the statute Sec. 2–217 Burns' 1946 Replacement, gives the parent, in his own right, a cause of action for loss of such services or other pecuniary injury occasioned by personal injuries to or the death of his minor child, which action is not one for injury to the person but for injury to property within the meaning of Sec. 2–601, Burns' 1946 Replacement.'
>
> "An action based upon the pecuniary loss suffered by the parent when wrongfully deprived thereof differs from the right of a widow or next of kin to recover, through a personal representative, for injuries sustained by reason of the death of an adult or emancipated minor, in that the latter is grounded upon their pecuniary interest in the life of the decedent and not on a property right. *Hahn v. Moore, supra.* 128 Ind.App. at 496–497, 148 N.E.2d at 206–207.

The implication is not a subtle one: A parent's interest, legal or otherwise, in a minor child does not extend beyond the property right in the child's services.

As surely as this narrow view of a minor child's meaning to his or her parents calls to mind the classical works of Charles Dickens, so the origins of the rule have been traced to the era of industrial development which dominated nineteenth century England. *Wycko v. Gnodtke,* (1960) 361 Mich. 331, 105 N.W.2d 118. In *Wycko,* Justice Smith described the then-prevailing socio-economic mood and the development of Lord Campbell's Act, the precursor of our modern-day wrongful death statutes. He concluded:

> "This, then, was the day from which our precedents come, a day when employment of children of tender years was the accepted practice and ther [sic] pecuniary contributions to the family both substantial and provable. It is not surprising that the courts of such a society should have read into the statutory words 'such damages as they [the jury] may think proportional to the injury resulting from such death' not only the requirement of a pecuniary loss, but, moreover, a pecuniary loss established by a wage benefit-less-costs measure of damages. Other losses were unreal and intangible and at this time in our legal history the courts would have no truck with what Chief Baron Pollock termed in *Duckworth, supra,* 'imaginary losses.' Loss meant only money loss, and money loss from the death of a child meant only his lost wages. All else was imaginary. The only reality was the King's shilling.
>
> "That this barbarous concept of the pecuniary loss to a parent from the death of his child should control our decisions today is a reproach to justice. We are still turning, actually, for guidance in decision, to 'one of the darkest chapters in the history of childhood.' Yet in other areas of the law the legal and social standards of 1846 are as dead as the coachman and his postilions who guided the coaches of its society through the dark and muddy streets, past the gibbets where still hung

---

1. In *Childs v. Rayburn, supra,* the trial court instructed the jury that among the factors it should consider in assessing the damages of a parent for the wrongful death of a child was the "loss of love and affection." The Court of Appeals found no error. In so ruling, the Court stated: "While the instruction does re-state the law, it does not misstate it." 169 Ind.App. at 159, 346 N.E.2d at 664.

the toll of the day's executions. In most areas the development of the law has paralleled the enlightened conscience of our people. Examples abound. * * * Yet there still exists in the law this remote and repulsive backwash of time and civilization, untouched by the onward march of society, where precedents we alone honor tell us that the value of the life of a child must be measured solely by the standards of the day when he peddled the skill of his hands and the strength of his back at the factory gates." 361 Mich. at 336, 105 N.W.2d at 121.

Here, neither the Court of Appeals nor the various parties which tendered briefs to this Court have even remotely suggested that a parent's interest in a child does not in fact extend beyond the value of the child's services. Nor has anyone attempted even distantly to imply that if a child dies, the parent does not suffer a loss of love, affection, and companionship. Nor has anyone maintained that when the death occurs by another's negligent act, the lost love, affection, and companionship is not a "natural consequence" of the negligence. *See generally New York, Chicago & St. Louis R. Co. v. Henderson,* (1957) 237 Ind. 456, 146 N.E.2d 531; *Charlie Stuart Oldsmobile, Inc. v. Smith,* (1976) 171 Ind.App. 315, 357 N.E.2d 247.

Why then is the rule perpetuated? Defendant Greer, as well as the *amicus curiae* brief filed on his behalf, asserts that the prohibition should continue because the damages are too "speculative" to allow recovery. That claim, simply stated, is a red herring. It is true that damages for lost love, affection, and companionship are not susceptible by mathematical computation, but that is not required by the law. *New York, Chicago & St. Louis R. Co. v. Henderson, supra; Friendship Farms Camps, Inc. v. Parson,* (1977) 172 Ind.App. 73, 359 N.E.2d 280. Rather, it is the well-settled rule that the existence and degree of psychological injuries may be determined by a jury based on "human experience." *New York, Chicago & St. Louis R. Co. v. Henderson, supra.* It is on this basis that juries have been entrusted with the responsibility to assess damages for numerous and assorted intangible injuries. *See, e. g., Troue v. Marker,* (1969) 253 Ind. 284, 252 N.E.2d 800 (damages for loss of spouse's society, companionship, and consortium); *New York, Chicago & St. Louis R. Co. v. Henderson, supra* (mental anguish and anxiety resulting from disfigurement and incapacity); *Harness v. Steele,* (1902) 159 Ind. 286, 64 N.E. 875 (humiliation and mortification resulting from public arrest); *Kline v. Kline,* (1902) 158 Ind. 602, 64 N.E. 9 (fright from assault); *Pennsylvania Co. v. Bray,* (1890) 125 Ind. 229, 25 N.E. 439 (indignity for removal from train); *Kroger Co. v. Beck,* (1978) Ind.App., 375 N.E.2d 640 (emotional distress from attempting to eat steak with hypodermic needle therein). Likewise, in *State v. Daley, supra,* it was explicitly recognized that the loss of love and affection was an injury which the jury was equipped to evaluate. For the court, Presiding Judge Buchanan stated:

"The assessment of damages for loss of intangibles such as love and affection can only be made by the trier of facts utilizing sound and liberal discretion." 153 Ind.App. at 338, 287 N.E.2d at 557.

The court's opinion that the loss of love, affection and companionship are injuries capable of ascertainment echo the sentiments of Dean Prosser, who wrote:

"Mental suffering is no more difficult to estimate in financial terms, and no less a real injury than 'physical' pain; it is not an independent intervening cause, but a thing brought about by the defendant's negligence itself, and its consequences follow in unbroken sequence from that negligence . . . ." [Footnotes omitted.] Prosser, *Law of Torts,* pp. 327–328 (4th Ed.1971).

The only other articulable reason for upholding the prohibition against a parent's recovery for the loss at issue is the doctrine of *stare decisis.* That was in fact the sole basis of the Court of Appeals' decision. *Boland v. Greer, supra.* I disparage neither the doctrine nor its invocation by the judges; *stare decisis* is justifiably a cornerstone of our system of jurisprudence.

As this state's highest Court, however, it has never been our policy to close our eyes to change or to disregard reality. When this Court has recognized that the legal and social underpinnings of a common law rule have evaporated, we have not refused to abolish or alter the rule. *See, e. g., Brooks v. Robinson,* (1972) 259 Ind. 16, 284 N.E.2d 794 (doctrine of interspousal immunity abolished as based on outmoded legal theories); *Troue v. Marker, supra* (prohibition of wife's recovery for loss of consortium abrogated on basis of changes in legal and social status of women; *Perkins v. State,* (1969) 252 Ind. 549, 251 N.E.2d 30 (sovereign immunity abolished in face of changing role of government and development of insurance). That is as it should be, for as Justice Arterburn stated in *Perkins*:

> "[T]he common law of today is not a frozen mold of ancient ideas, but such law is active and dynamic and thus changes with the times and growth of society to meet its needs." 252 Ind. at 554, 251 N.E.2d at 33.

*See also,* O. Holmes, *The Common Law,* p. 5 (1881). The rule at issue was born in the common law. Likewise, for lack of social and legal foundation, it should have perished in the common law here today.

Finally, I note that Boland also sought damages under the so-called "lost investment" theory. In other words, he sought recovery for his expenses incurred in rearing his deceased minor daughter from birth to death, including food, clothing, shelter, dental care, education, and general parental care and instruction. Both the trial court and Court of Appeals refused to recognize these expenditures as a compensable injury.

I emphasize that I agree with those courts. At the same time, however, I concede that if recovery for lost love, affection, and companionship be denied under the theory that the parent's loss is strictly a "property right," then it defies all common and legal sense to say that a parent does not suffer a "lost investment." Within the bounds of property and business law, there can be no doubt that the terms "property right" and "lost investment" represent complementary concepts.

As applied to parent-child relationships, I find the terms "property right" and "lost investment" both patently offensive and wholly anachronistic. However appropriate the terms might have once been, the passage of child labor laws rendered those terms inapplicable to the parent-child relationship. *See generally, Wallace v. Woods,* (1971) 149 Ind.App. 257, 271 N.E.2d 487. Today, child-rearing is not a profitable venture, and parents do not undertake it for the purpose of obtaining an "interest" in a "property right."

In perpetuating a rule founded on that antiquated notion, it is precedent alone we honor. I dissent. I would grant transfer, vacate the decision of the Court of Appeals, reverse the trial court, and remand the cause for a reassessment of damages.