Don H. **MILLER**, Indiana Insurance Commissioner, Defendant-Appellant,

v.

Richard Eugene **MAYBERRY** and Doris Mayberry, Individually and as Personal Representatives of the Estate of Richard Eugene Mayberry, II, Claimants-Appellees,

Michael Wheeler, M.D., Inc., Gilbralter Insurance Company Winona Memorial Hospital, and the Hartford Insurance Company, Defendants.

No. 2–683A188.

Court of Appeals of Indiana, Second District.

April 30, 1984.

Rehearing Denied May 31, 1984.

---

Linley E. Pearson, Atty. Gen. of Ind., Marsha Harrison, Deputy Atty. Gen., Indianapolis, for defendant-appellant.

Craig Pinkus, William W. Hurst, Mitchell Hurst Pinkus Jacobs & Dick, Indianapolis, for claimants-appellees.

Michael A. Bergin, Locke Reynolds Boyd & Weisell, Indianapolis, amicus curiae for Ins. Institute of Indiana, Inc.

Geoffrey Segar, Myra C. Selby, Ice, Miller, Donadio & Ryan, Indianapolis, amicus curiae for Indiana State Medical Ass'n.

Rebecca G. Looney, Scott & Looney, New Albany, amicus curiae for Indiana Trial Lawyers Ass'n.

RATLIFF, Judge, Writing by Designation.

## STATEMENT OF THE CASE

In a court trial, the Marion Superior Court rendered judgment for the plaintiffs, Richard and Doris Mayberry and the estate of their son Richie (Mayberrys), and awarded them damages in the amount of $367,-388. The Indiana Insurance Commissioner (Commissioner) now appeals.

We reverse.

## FACTS

Richie Mayberry, aged 17 months, sustained serious injuries when struck by an automobile on May 19, 1981. His father took him immediately to Winona Memorial Hospital in Indianapolis where he was examined in the emergency room by Dr. Wheeler. After examining Richie and inspecting x-rays taken at that time, Wheeler released Richie and informed the elder Mayberry that he was fine. The following morning Richie became unconscious and his parents rushed him to Methodist Hospital where he soon died as a result of internal bleeding caused by pelvic fractures sustained the previous day which were not detected.

Following Richie's death, the Mayberrys instituted a malpractice action against Wheeler, Winona Memorial Hospital, and Midwest Medical Management, Inc. The parties eventually negotiated a settlement wherein the defendants agreed to pay the Mayberrys the sum of $132,612.[1] Thereafter, the Mayberrys filed their petition for

---

1. The respective amounts were: $15,112 on behalf of Wheeler and Midwest; $17,500 on behalf of Winona; and $100,000 on behalf of Midwest's liability carrier.

damages from the Patient's Compensation Fund[2] naming the Commissioner as defendant. The trial court awarded the Mayberrys $367,388 in compensatory damages but denied their request for punitive damages.

Additional facts are stated in our discussion of the issues.

### ISSUES

While the Commissioner has raised several issues, we believe one is dispositive of this case.

Did the trial court erroneously consider the Mayberry's loss of love and affection in determining the amount of damages to be awarded?

### DISCUSSION AND DECISION

Essentially, the Commissioner argues the trial court erred in its assessment of damages by considering the Mayberrys' loss of love and affection as a result of their son's untimely death. In the Commissioner's view, the trial court's findings as well as the sum awarded reflect that these elements were improperly considered.

Countering the Commissioner's argument, the Mayberrys contend the services rendered by Richie are readily distinguishable from love and affection and were properly considered by the trial court in assessing damages. According to the Mayberrys, the trial court's findings merely cite to "acts of kindness and attention" which are permissible considerations in such actions. While we sympathize with the Mayberrys in their grievous loss and believe a sound argument can be made that parents should be permitted to obtain damages for the loss of the love and affection of their children, we are constrained to agree with the Commissioner.

In 1931 our supreme court declared:
"It is well settled law in this State that the measure of damages for lost services of a minor child, in case of instant death, is 'the value of the child's services from the time of the death until he would have attained his majority, taken in connection with his prospects in life, less the cost of his support and maintenance during that period, including such as board, clothing, schooling and medical attention.' *City of Elwood v. Addison* (1901), 26 Ind.App. 28, 59 N.E. 47. See also *Cleveland, C., C. & St. L. Ry. v. Miles* (1904), 162 Ind. 646, 70 N.E. 985; *Southern I. Ry. v. Moore* (1904), 34 Ind.App. 154, 71 N.E. 516, 72 N.E. 479."

*Thompson v. Town of Fort Branch*, (1931) 204 Ind. 152, 164, 178 N.E. 440, 444.

Since *Thompson*, this court has had occasion to consider the pecuniary loss rule numerous times. *See e.g., Boland v. Greer*, (1980) Ind.App., 409 N.E.2d 1116, *trans. denied* (1981); *Childs v. Rayburn*, (1976) 169 Ind.App. 147, 346 N.E.2d 655, *trans. denied; Wallace v. Woods*, (1971) 149 Ind.App. 257, 271 N.E.2d 487, *trans. denied* (1972); *Siebeking v. Ford*, (1958) 128 Ind.App. 475, 148 N.E.2d 194, *trans. denied; Hahn v. Moore*, (1956) 127 Ind. App. 149, 133 N.E.2d 900, *trans. denied.* Because of the confusion these cases have wrought with regard to the pecuniary loss rule announced by our supreme court, we will examine several of them in detail.

Beginning with *Hahn*, this court arguably expanded the rule to include the "value of all acts of *kindness and attention* which the deceased child might reasonably be anticipated to render until its majority." *Id.* at 158, 133 N.E.2d at 904 (emphasis supplied).

Then, relying upon the language of *Hahn*, we made the following observation in a subsequent case:
"Thus, for example, 'loss of love and affection' as stated in the instruction is basically the same thing as 'acts of kindness and attention' as stated in *Hahn*. Thus, while we might prefer that the instruction more closely adhere to the language in the case, we nonetheless conclude that the instruction is not prejudicially confusing or misleading. While

---

**2.** Indiana Code section 16–9.5–4–3 (1983 Repl.).

the instruction does re-state [sic] the law, it does not mis-state [sic] it."

*Childs*, 169 Ind.App. at 159, 346 N.E.2d at 663–64 (footnote omitted).

This court's observations notwithstanding, the language in *Childs* improperly extended the pecuniary loss rule as established by our supreme court in *Thompson*. Therein, quoting a Rhode Island Supreme Court case with approval, the court noted:

"But the jury are not at liberty to consider the fact that the plaintiff has been deprived of the comfort and society of the child, nor can they consider any physical or mental suffering or pain which may have been sustained by the parent by reason of the injury to the child. *In short, the measure of damages in such a case is the same as that which obtains in a case brought by a master for the loss of services of his servant or apprentice. It is therefore practically a business and commercial question only, and the elements of affection and sentiment have no place therein.* [*McGarr v. National & Providence Worsted Mills*, (1902) 24 R.I. 447, 460–61, 53 A. 320, 325–26 (emphasis supplied, citations omitted).]"

*Thompson*, 204 Ind. at 158, 178 N.E. at 442.

Recognizing the limitations of the pecuniary loss rule thus established, Judge Hoffman recently wrote:

"Boland has offered a comprehensive analysis of the policy considerations underlying the trend toward permitting parents to recover not only intangible losses such as love and companionship but also child-rearing expenses. His contentions raise serious doubts as to the continued viability of the traditional rule followed in Indiana. Nevertheless, the Court of Appeals is obliged to follow the precedents established by the Indiana Supreme Court. As noted in *Wallace v. Woods*, [ (1971) 149 Ind.App. 257, 271

N.E.2d 487] the highest court in this state has expressly adopted the pecuniary loss rule as the proper measure of damages in actions involving wrongful deaths of minor children. It would therefore be presumptuous for this Court to strike down that longstanding rule."

*Boland*, 409 N.E.2d at 1120.[3]

In the instant case, the trial court made the following findings:

"11. The testimony of Richard Eugene Mayberry established that the services rendered to him by Richie were of great, substantial, and unique value.

12. As a result of his military service in southeast Asia, Richard Eugene Mayberry underwent a lengthy depression or personality change. As expressed by his uncle, Mr. Boatwright, he went from being an outgoing person to one who was quiet and withdrawn all the time.

13. After his military service, Mr. Mayberry abandoned the broadcasting career for which he had obtained special training, and which was off to a promising beginning prior to his tour of duty in Thailand.

14. Following Richie's birth, his acts of kindness and attention to his father were a major factor in helping to end the period of depression or withdrawal, and to reverse the effects of Mr. Mayberry's experiences in southeast Asia.

15. Richie instilled pride in his father who had long desired a son. He helped bring his father out of his withdrawn behavior so that Mr. Mayberry once again participated in family social activities.

16. The testimony of Doris Mayberry established that Richie rendered service of great value to her as well.

17. Both Mr. and Mrs. Mayberry worked with children before having children of their own. Mr. Mayberry

---

**3.** Judge Hoffman's view, moreover, appears to be confirmed in the dissenting opinion of Justice Hunter to the denial of Boland's petition to transfer. See *Boland v. Greer*, (1981) Ind., 422 N.E.2d 1236. Justice Hunter noted the present status of the pecuniary rule as follows: "[The] rule is that the assessment of damages suffered by a parent for the wrongful death of a child cannot include the parent's loss of love, affection, and companionship." *Id.* at 1236.

worked with youth league athletic and other activities while Mrs. Mayberry worked with children as an employee of the Indianapolis Public Schools.

18. Doris Mayberry's experience led her to begin teaching Richie in various ways, and she, in turn, learned much from her son. As a religious person, she had also begun Richie's religious training, and he regularly attended church with her.

19. The evidence is that Richie was a child of above average intelligence, kindness, and attentiveness.

20. The Mayberry family was a closely knit one which, after Richie's birth, engaged in virtually all activities as a group. The night Richie was struck by a car and taken to defendant hospital, the family had been bowling with other relatives in a family bowling league. Richie attended all such events."

Record at 56–7.

In addition to its consideration of the "acts of kindness and attention" in determining the damages to be awarded the Mayberrys, the trial court also found that *Hahn* represented "an advance in the law from a decision such as that in *Thompson.*" Record at 59. Thus, the trial court concluded, in light of *Hahn* as well as *Childs,* that:

"Whatever may have been the condition of society in 1902 or 1931, the Court finds that the question of the pecuniary value of acts of kindness and attention from one's own child is not 'a business and commercial question only.' There is no business from which the Mayberrys could purchase the unique acts of kindness and attention which would have been performed for them by Richie."

Record at 60.

These findings, in our view, clearly indicate the trial court improperly considered the Mayberry's loss of love and affection in assessing the damages to be awarded. It was not for this court to "advance" the law, as suggested by the trial court in its findings. Our supreme court has established that the pecuniary loss rule does not include the loss of love and affection; we are not in a position to amend this standard. Rather, "the Court of Appeals is obliged to follow the precedents established by the Indiana Supreme Court." *Boland,* 409 N.E.2d at 1120. Accordingly, we must reverse the trial court and remand for a redetermination of damages.

Reversed and remanded.

BUCHANAN, C.J., and SHIELDS, J., concur.