**Don H. MILLER, Indiana Insurance Commissioner, Appellant (Defendant below),**

v.

**Richard Eugene MAYBERRY and Doris Mayberry, Individually and as Personal Representatives of the Estate of Richard Eugene Mayberry, II, Appellees (Claimants and Petitioners below),**

v.

**MICHAEL WHEELER, M.D., INC., Gibralter Insurance Company, Winona Memorial Hospital, and Hartford Insurance Company, Defendants below.**

No. 2–683A188.

Supreme Court of Indiana.

Sept. 13, 1984.

Linley E. Pearson, Atty. Gen., Alfred K.B. Tsang, Deputy Atty. Gen., Indianapolis, for appellant.

Rebecca G. Looney, Scott & Looney, New Albany, for amicus curiae Ind. Trial Lawyers Ass'n.

Craig Pinkus, William W. Hurst, Mitchell Hurst Pinkus Jacobs & Dick, Indianapolis, for appellees.

Geoffrey Segar, Myra C. Selby, Ice, Miller, Donadio & Ryan, Indianapolis, for amicus curiae Ind. State Medical Ass'n.

Michael A. Bergin, Locke, Reynolds, Boyd & Weisell, Indianapolis, for amicus curiae Ins. Institute of Ind., Inc.

ON PETITION TO TRANSFER

HUNTER, Justice, dissenting to denial of transfer.

I must respectfully dissent to the denial of transfer in this case. This case demonstrates all the more why the pecuniary loss rule as the measure of damages in the wrongful death of a child is an anachronism. I believe that the measure of dam-

ages should be expanded to include the loss of love and affection, and would therefore grant transfer, vacate the opinion of the Court of Appeals, and affirm the trial court.

The facts of this case were set forth succinctly by the Court of Appeals:

"Richie Mayberry, aged 17 months, sustained serious injuries when struck by an automobile on May 19, 1981. His father took him immediately to Winona Memorial Hospital in Indianapolis where he was examined in the emergency room by Dr. Wheeler. After examining Richie and inspecting x-rays taken at that time, Wheeler released Richie and informed the elder Mayberry that he was fine. The following morning Richie became unconscious and his parents rushed him to Methodist Hospital where he soon died as a result of internal bleeding caused by pelvic fractures sustained the previous day which were not detected.

"Following Richie's death, the Mayberrys instituted a malpractice action against Wheeler, Winona Memorial Hospital, and Midwest Medical Management, Inc. The parties eventually negotiated a settlement wherein the defendants agreed to pay the Mayberrys the sum of $132,612. Thereafter, the Mayberrys filed their petition for damages from the Patient's Compensation Fund naming the Commissioner as defendant. The trial court awarded the Mayberrys $367,388 in compensatory damages but denied their request for punitive damages." (Footnotes omitted.)

*Miller v. Mayberry,* (1984) Ind.App., 462 N.E.2d 1316, 1316–17. The Court of Appeals reversed the trial court and held that the trial court improperly considered the loss of the child's love and affection in determining damages. Judge Ratliff felt constrained by existing law in Indiana to make such a holding even though he believed "a sound argument [could] be made

that parents should be permitted to obtain damages for the loss of the love and affection of their children ...." *Id.,* 462 N.E.2d at 1317. I, too, believe that a sound argument can be made. It is time to abandon this brutal and archaic law.

My reasons for disagreeing with the pecuniary loss rule have been previously set forth in another dissent to the denial of transfer in a case involving the same issue. *Boland v. Greer,* (1981) Ind., 422 N.E.2d 1236 (Hunter, J., dissenting to denial of transfer). I still adhere to those arguments and I need not reiterate them. I do, however, believe there is a need to discuss the argument that change must or should come from the legislature rather than the judiciary.

As has been noted by the courts in jurisdictions that have abandoned the pecuniary loss limitation, this rule has its genesis in nineteenth century English law. *See e.g., Sanchez v. Schindler,* (Tex.1983) 651 S.W.2d 249; *Dawson v. Hill & Hill Truck Lines,* (Mont.1983) 671 P.2d 589; *Selders v. Armentrout,* (1973) 190 Neb. 275, 207 N.W.2d 686; *Wardlow v. City of Keokuk,* (Iowa, 1971), 190 N.W.2d 439; *Van Cleave v. Lynch,* (1946) 109 Utah 149, 166 P.2d 244. Prior to Lord Campbell's Act, 9 & 10 Vict., ch. 93 § 1 (1846), English law did not allow damages in the case of a wrongful death. Lord Campbell's Act allowed designated beneficiaries a right of action for damages, although it did not specify the type of damages allowed. English courts later held that damages were to be based on pecuniary losses. *Blake v. Midland Ry. Co.,* (1852) 18 Q.B. 93, 118 Eng.Rep. 35.

Lord Campbell's Act became the basis for most American wrongful death statutes, including our own. The statute involved here,[1] like Lord Campbell's Act, does not limit damages to pecuniary losses. As it was in England, the pecuniary loss rule in Indiana is a creature of judicial fiat.

---

1. Ind.Code § 34–1–1–8 (Burns 1984 Supp.). The trial court specifically stated that this action was brought under the wrongful death of child statute, *id.,* rather than the general wrongful death statute, Ind.Code § 34–1–1–2 (Burns 1984

Supp.). Thus the limitation of damages contained in Ind.Code § 34–1–1–2 relating to when a decedent "leaves no ... widow, widower, or dependent children, or dependent next of kin ..." does not apply to this case.

Ninety years ago in the case of *Louisville, N.A. & C. Ry. v. Rush*, (1891) 127 Ind. 545, 26 N.E. 1010, this Court imposed the pecuniary loss rule; it has, unfortunately, remained the law ever since.

Thus, what we have is a judicially created restriction on a legislative act. Since we created the rule, we can abolish it. There is no reason that we must entrust the task of changing the law to the legislature. We are not dealing with a peculiarly legislative matter. I also do not believe that ninety-three years of legislative inaction should be considered as tacit acceptance of the rule, thus precluding this Court from acting. "Inaction of the legislature cannot be interpreted as prohibiting judicial reappraisal of the judicially created pecuniary loss rule." *Sanchez v. Schindler*, 651 S.W.2d at 252. Therefore, I find little merit in the argument that a change in the pecuniary loss rule should come from the legislature.

The pecuniary loss rule, perhaps now more than ever, is woefully out of step with the times. As has been noted by the Supreme Court of Minnesota, the rule

> "may have met the needs of the community in the last century when our society was largely rural and a child might be considered an economic asset. The changes which have occurred in the social and economic life of the community since the test was first adopted require a reappraisal of its meaning and application. We must view the death-by-wrongful-act statute in the light of present-day conditions."

*Fussner v. Andert*, (1961) 261 Minn. 347, 113 N.W.2d 355, 359. In the light of present day economic realities, the pecuniary loss rule is too restrictive, and the measure of damages should be expanded to include an award for loss of love and affection. I believe a jury will be able to accurately and fairly make such an award; it cannot be presumed that the jury leaves its common sense at the courthouse door. In short, the time has come to abandon the antiquated notion that the loss of a child can only be measured in terms of lost dollars. "The real loss sustained by a parent

... is the loss of love, advice, comfort, companionship and society." *Sanchez v. Schinder*, 651 S.W.2d at 251.